**In re DYSERT.**

Court of Claims of Ohio,
Victims of Crime Division.

No. V94–35059.

Decided May 18, 1995.

*Martin Joseph Sammon,* for the claimant.

*Betty D. Montgomery,* Attorney General, for the state.

---

OPINION AND ORDER OF THREE-COMMISSIONER PANEL.

This cause came to be heard before this panel of three commissioners on March 8, 1995 upon the applicant Paula Dysert's December 2, 1994 objection and notice of appeal to the November 23, 1994 decision of the single commissioner.

The applicant, counsel for the applicant, and the Attorney General attended the hearing and presented testimony, exhibits, and oral argument for this panel's review and consideration.

The single commissioner had denied the applicant's claim pursuant to R.C. 2743.52(A) because the commissioner found that the applicant failed to prove, by a preponderance of the evidence, that she incurred economic loss as a result of the death of decedent, Daniel J. Dysert.

At the hearing, the applicant testified that she and her husband (the decedent) lived together with their minor children at the time of the decedent's death, and, in addition, that their adult child Melissa lived with them and cared for her child. Mrs. Dysert related that she worked steadily as a home health aid for Dorothy Rogers and earned $36,818.00 in 1993 and $29,538.00 in 1994. In addition, the applicant stated that she earned an additional $1,031.43 from a part-time job at Discount Drug Mart that she had to resign following the victim's death. This testimony was corroborated by applicant's exhibits A and B, which consisted of W–2 Wage and tax statement forms for 1993 and 1994. Mrs. Dysert further testified that the decedent, Mr. Dysert, had been unemployed since 1974, except for odd jobs he picked up in the neighborhood. Mrs. Dysert estimated that Mr. Dysert earned approximately $200 per month from odd jobs. When questioned as to why she earned less in 1994 than in 1993, Mrs. Dysert related that she had to cut back her hours following her husband's death because she had no one to watch the kids, sons Jason and James, while she was at work. Ordinarily, Mr. Dysert would stay home with the kids while the applicant was at work.

Mrs. Dysert testified that, presently, she pays daughter Melissa $50 per week to watch the children and allows Melissa to live in her home (which rents for $500 per month) free of charge. Upon cross-examination, Mrs. Dysert explained that she cannot rely on Melissa to keep the children the same hours that her husband had kept them previously. Mrs. Dysert also related that Melissa watches James, thirteen, and Jason, ten, her two younger brothers, but is unable to give them the support and guidance that their father did; consequently, Jason and James are unable to participate in many activities after school because their father is not there to accompany them.

Counsel for the applicant argued that Mrs. Dysert and Jason and James Dysert were dependents-in-fact of the decedent. Counsel stated that the boys' father was present, provided care and support, and enabled Mrs. Dysert to work more hours and, thus, to earn more money. Counsel further argued the applicant has incurred $2,600 per year ($50 per week paid to Melissa), $125 per month (room and board for Melissa and her daughter), and approximately $8,300 per year (lost wages) in dependent's replacement services loss as a result of the decedent's death. In addition, counsel pointed out that Social Security benefits received as a result of the decedent's death have not fully reimbursed this loss.

The Attorney General argued that there is no independent evidence of the $50 per week payments to Melissa Dysert, which would otherwise constitute a childcare expense. However, the Attorney General argued that the room and board expense of $125 per month is not an element of "economic loss," as defined in R.C. 2743.51(E), since it arises from a *quid pro quo* arrangement. Finally, the Attorney General argued that the applicant's loss of income is not dependent's

replacement services loss because parents have a responsibility to care for their children and nothing has been "paid out" for childcare.

R.C. 2743.52(A) places the burden of proof upon the applicant to satisfy the Court of Claims commissioners that the requirements for an award of reparations have been met by a preponderance of the evidence. *In re Rios* (1983), 8 Ohio Misc.2d 4, 8 OBR 63, 455 N.E.2d 1374, paragraph one of the syllabus. Black's Law Dictionary defines "preponderance of evidence" as follows:

"Evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not. *Braud v. Kinchen,* La.App., 310 So.2d 657, 659. \* \* \* The word 'preponderance' means something more than 'weight'; it denotes a superiority of weight, or outweighing. The words are not synonymous, but substantially different. There is generally a 'weight' of evidence on each side in case of contested facts. *But juries cannot properly act upon the weight of evidence, in favor of the one having the onus, unless it overbear, in some degree, the weight upon the other side.*" (Emphasis added.) Black's Law Dictionary (5 Ed.1979) 1064.

Ordinarily, a *prima facie* claim is made when the applicant files an application in accordance with R.C. 2743.56 and submits such additional material, information, and evidence as required by R.C. 2743.59. *In re Williams* (Mar. 26, 1979), Ct. of Cl. No. V77–0739jud, unreported.

R.C. 2743.51(D) defines "dependent" as "an individual wholly or partially dependent upon the victim for care and support, and includes a child of the victim born after his death."

 A claim for dependent's replacement services loss may be based on quasi-contractual obligations. The measure of the loss incurred as a result of a quasi-contractual obligation is the lesser of either the wages lost by the children's custodians if they were required to resign from previous employment, or the expenses which would be incurred if another person were hired to care for the children. The applicant need not actually relinquish present employment in order to incur dependent's replacement services loss. See *In re Mitchell* (Aug. 7, 1981), Ct. of Cl. No. V78–3169sc, unreported; and *In re Kerr* (May 12, 1982), Ct. of Cl. No. V80–47688sc, unreported.

 From review of the file, with full consideration given to the evidence and oral argument adduced at the hearing, this panel finds that the findings of fact and conclusions of law of the single commissioner fail to properly address the issues and interpret the law. Rather, it is the finding of this panel that the applicant sustained economic loss as a result of the decedent's death. As the testimony and exhibits reveal that not only did the applicant have to cut back her

work hours and resign from a part-time job to care for her children due to the death of her husband, but also she had to pay her daughter $50 per week to watch the children when she could not be there. Prior to the criminally injurious conduct, the decedent was available to provide childcare, support, and guidance to his children, and these services were a vital and essential contribution to the economic well-being of the decedent's family. Thus, while the greatest loss suffered by the Dysert family as a result of the victim's death is surely intangible, the economic loss sustained by the applicant and the decedent's minor children can be quantified. Therefore, this claim shall be remanded to the single commissioner for determination and referred to the Attorney General for calculation of economic loss, and the November 23, 1994 order of the single commissioner shall be reversed as to the denial of dependent's replacement services loss.

IT IS THEREFORE ORDERED THAT:

1. The November 23, 1994 order of the single commissioner is AFFIRMED as to funeral expense and REVERSED as to dependent's replacement services loss;

2. The Clerk shall certify the November 23, 1994 judgment in the amount of $2,500 to the Director of the Office of Budget and Management for payment to the applicant pursuant to R.C. 2743.191;

3. When certifying this judgment to the Director of Budget and Management, the Clerk shall send the Director of Budget and Management a copy of this order and the November 23, 1994 order of the single commissioner;

4. This award is expressly conditioned upon the subrogation provisions of R.C. 2743.72, which require any benefits or advantages received from any collateral source, including the offender, be repaid to the state of Ohio;

5. This claim is remanded to the single commissioner for further determination and referred to the Attorney General for further investigation and a new finding of fact and recommendation concerning dependent's replacement services loss;

6. The Attorney General shall file an amended finding of fact and recommendation on or before June 19, 1995;

7. The applicant may respond to the new finding of fact and recommendation within twenty-one days after it is filed by the Attorney General;

8. Costs assumed by the reparations fund.

*Judgment accordingly.*

WILLIAM A. CARROLL, STEVEN A. LARSON and DALE A. THOMPSON, Commissioners, concur.